**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

TODD BONDS,         :   Case No. 2:25-cv-1487
            :
  Plaintiff,        :
            :
            :   District Judge Michael H. Watson
vs.            :   Magistrate Judge Kimberly A. Jolson
            :
PREMIERE PHYSICIAN SERVICES, INC,   :
*et al*.,           :
            :
  Defendants.       :

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. 8). Because Plaintiff filed his Amended Complaint as a matter of course within the 21-day period permitted by Rule 15(a), his Motion to Amend (Doc. 8) is **GRANTED**. The motions to dismiss the original Complaint filed by Defendants Smetana and PPS (Docs. 4, 7) are **DENIED without prejudice as moot**.

Now, after conducting the required screen of the Amended Complaint, the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's Amended Complaint.

## I. BACKGROUND

*Pro se* Plaintiff, a former inmate at the Fairfield County Jail ("FJC" or "Jail") in Lancaster, Ohio, who is currently residing in Cincinnati, Ohio, filed the instant action in the Montgomery County Court of Common Pleas against twelve defendants: the Jail; Premiere Physicians Services, Inc. ("PPS"); PPS "agent" Jackie Smetana; Nurses D. Howard, Sadie Adams, and Rutter; Fairfield County Commissioner Steve Davis; Fairfield County Sheriff Alex Lape; Corrections Officers Kayla Towns, Kunkel, and Mulder; Corporal A. Reeves; and Lieutenant Warner. (*See* Doc. 2).

Defendants Commissioner Davis, Sheriff Lape, Corporal Reeves, and the Jail removed the case here and paid the filing fee. (Doc. 1). Following their response to the Court's Show Cause Order (*see* Docs. 17, 18), removal appears appropriate. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 37–38 (2025).

The case is currently before the Court for initial screening of Plaintiff's Amended Complaint (Doc. 8-1), to determine whether the Amended Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

## II.      STANDARD

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915 (e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting

*Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under, in relevant part, § 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson*, 551 U.S. at 93 (citations omitted).

III.        DISCUSSION

Plaintiff alleges claims under 42 U.S.C. § 1983 and Ohio state law and seeks monetary and injunctive relief.  (Doc. 8-1).  He contends the events giving rise to his action occurred between September and December 2023—the three-month period that he was incarcerated at the Jail.  (*Id.* at 5).  In November 2023, Plaintiff contracted a skin rash.  (*Id.* at 9).  He requested treatment but due to a medical staffing shortage, he had to wait a few days before he could be seen.  (*Id.* at 9–

3

10).  Plaintiff filed a grievance stating that his rash was worsening and causing him constant itching and difficulty sleeping.  (*Id.* at 10).

When Plaintiff was seen, Defendant Rutter took pictures of Plaintiff's back and found "no visible rash was currently present."  (*Id.* at 11).  Plaintiff disagreed and asked non-party Corrections Officer Davis, "a young black/biracial male," to look at his back.  (*Id.* at 12).  Around the same time, Defendant Mulder, also nearby, summoned a supervising officer named Smith.  (*Id.*).  After looking at Plaintiff's back, Davis, together with Smith, agreed that the rash was clearly visible. (*Id.*).  They "immediately" called Defendant Howard, who applied medicated lotion to help Plaintiff until he could see the doctor in about a week.  (*Id.*).  Defendant Howard again applied lotion to Plaintiff's back when he saw the doctor.  (*Id.* at 13).  Plaintiff states that he filed a grievance about Defendant Rutter's "blatant falsehood."  (*Id.* at 12).  According to Plaintiff, the grievance was initially deemed "founded" but later changed to show that Defendant Rutter had not engaged in any wrongdoing.  (*Id.*).

At an unspecified later time, as Defendant Adams passed out medication with Defendant Mulder, Plaintiff indicated that he could not reach the areas of his back where the infection was most troublesome.  (*Id.* at 13).  Defendant Adams told Plaintiff to ask another inmate for help. (*Id.*).  Plaintiff responded, "Huh?," and Defendants Adams and Mulder repeated in unison, "You'll have to ask another inmate to rub the medication in."  (*Id.*).  Plaintiff was "baffled" because Defendant Howard had applied the medication to his back on two occasions.  (*Id.*).  Plaintiff also alleges that requesting another inmate to help would have exposed him to a "PREA" investigation or to possible harassment and targeting from other inmates.  (*Id.*).  Additionally, Plaintiff contends that he had overheard Defendant Rutter discussing having to apply "ointment to the buttocks of a white male inmate who had discharge coming from a sore."  (*Id.* at 13, 19).

Plaintiff states that he was the only inmate at the Jail with a rash. (*Id.* at 10). From this and Defendant Rutter's allegedly indifferent attitude to the rash, Plaintiff surmises that she was to blame for giving him the rash. (*Id.*). Plaintiff also blames Defendant Towns for the rash because she was allegedly romantically involved with another inmate, who Plaintiff claims was "unnecessarily hostile" to him. (*Id.* at 10–11).

On another occasion, also in November 2023, Plaintiff alleges as Defendant Towns gave Plaintiff his daily medication, Plaintiff saw an inmate, who Towns was allegedly romantically involved with, reading his medical information. (*Id.* at 15). When the inmate allegedly asked why Plaintiff took so many pills, Plaintiff requested that he be given privacy at the medical cart. (*Id.*). Defendant Towns became incensed and shouted profanity at Plaintiff. (*Id.*). A few minutes later, non-party Corrections Officer Hunter and Corrections Officer Davis, "the only black male corrections officer working at the time," approached Plaintiff. (*Id.*). They asked Plaintiff what happened at the medical cart, as Defendant Towns had sent them over. (*Id.*). After Plaintiff gave them his side of the story, they checked the video and decided not to put him in segregation. (*Id.* at 15–16).

Plaintiff also alleges that he was denied a position as a Jail trustee "for no specific reason." (*Id.* at 16). Plaintiff asked why he was denied, as all the trustees were either white or biracial, with the most recently selected trustee being a "repeat, white male inmate whose teeth were eroding due to drug use." (*Id.*). Plaintiff was told that the Jail did not discriminate. (*Id.*). Defendant Reeves also allegedly responded by "kite" that "insinuating" was "not a great look." (*Id.*). Defendant Lieutenant Warner allegedly responded that he was "offended" by Plaintiff's insinuation. (*Id.*). Without additional detail, Plaintiff asserts that the Jail chooses trustees in an arbitrary and capricious manner. (*Id.*).

Plaintiff next contends that a white inmate harassed him.  (*Id.* at 17).  Although Plaintiff does not allege when this occurred, Exhibit 7 to the Amended Complaint contains a copy of a grievance indicating that the harassment occurred on October 12 or 13.  (Doc. 8-8 at 1).  The inmate allegedly drew a Nazi swastika on a bed sheet and placed it near Plaintiff's bed.  (*Id.*; *see also* Doc. 8-1 at 17).  At the time, Plaintiff was the only non-white inmate in the pod of about 30 inmates.  (Doc. 8-1 at 17).  Plaintiff told Defendant Mulder about the drawing when Defendant Mulder was passing out dinner, and he allegedly laughed.  (*Id.*).  When dinner was being collected, Plaintiff asked Defendant Mulder if they had caught the culprit.  (*Id.*).  Defendant Mulder, who was then standing next to Corrections Officer Hunter, said "Oh yeah" and whispered something to Hunter.  (*Id.* at 17–18).  Plaintiff states that Hunter appeared shocked and concerned.  (*Id.* at 18).  Within five minutes, Hunter summoned Plaintiff to the front of the pod and told him to pack his things.  (*Id.*).  Plaintiff alleges that the inmate who left the swastika near Plaintiff's bed was sent to isolation.  (*Id.*).  Plaintiff requested the name of that inmate in order to press charges but never received it.  (*Id.*).

Finally, Plaintiff asserts that he made public records requests to obtain information concerning his claims.  (*Id.* at 10).  As noted above, Plaintiff contends that he requested the name of the inmate who displayed the swastika but never received it.  (*Id.* at 18).  Plaintiff also alleges that certain records were altered by Jail employees (*id.* at 12) or destroyed (*id.* at 14).

Based on the above allegations, Plaintiff raises the following five claims:  (1) discrimination against Defendants Rutter, Adams, Howard, PPS, the Jail, Reeves, Warner, and Lape, which the Court understands to be brough under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) intentional spoliation against Defendants the Jail, Lape, PPS, Howard, Adams, and Rutter, which the Court understands to be

raised under the Due Process Clause of the Fourteenth Amendment and Ohio law; (3) retaliation against Defendants Towns, Warner, Adams, PPS, Howard, and Rutter, which the Court understands to be raised under the First Amendment; (4) corrupt activity against Towns, Rutter, PPS, Howard, Adams, Lape, the Jail, and Mulder under Ohio law; and (5) deliberate indifference to a serious medical need against Defendants PPS, Towns, Rutter, Adams, and Mulder, in violation of the Eighth Amendment. (*Id.* at 19–26). For the following reasons, the Court should dismiss Plaintiff's § 1983 claims and remand his state-law claims to the Montgomery County Court of Common Pleas.

### A. Section 1983 Claims

The Undersigned first addresses Plaintiff's claims against Defendants Smetana, Commissioner Davis, and Kunkel and his official-capacity claims before turning to his substantive § 1983 claims.

#### 1. *Defendants Smetana, Commissioner Davis, and Kunkel*

To begin, a plaintiff must allege "personal involvement" in the alleged unconstitutional conduct to hold an individual defendant liable under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (personal involvement is required for personal liability). Section 1983 does not "incorporate doctrines of vicarious liability[,]" so a defendant is not automatically liable for the acts of those they supervise. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Rather, to incur liability, a defendant must have directly participated in or encouraged an unconstitutional act. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

Here, the Amended Complaint contains no allegations against Defendants Smetana, Commissioner Davis, or Kunkel. And "[m]erely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citation omitted). Plaintiff

7

therefore fails to state a § 1983 claim for relief against these Defendants and any such claims against them should be dismissed. *See Rice v. Jones*, No. 1:22-CV-695, 2023 WL 2477594 (S.D. Ohio Mar. 10, 2023), *report and recommendation adopted*, 2023 WL 3151861 (S.D. Ohio Mar. 31, 2023).

2. *The Jail and County Defendants Sued in an Official Capacity*

Next, Plaintiff cannot pursue § 1983 relief against the Jail because a jail is not a "person" subject to liability under § 1983. *Cage v. Kent County Corr. Facility*, No. 96-CV-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (finding "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"). And, even construing Plaintiff's claims against the Jail as against Montgomery County, Plaintiff does not allege that any policies or customs of the County caused the alleged violation of his constitutional rights. *See Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For this reason, any official capacity claims against the County Defendants should also be dismissed. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that claims against officials in their official capacity are effectively claims against the entity that employs them). In sum, Plaintiff's § 1983 claims against the Jail and any claims against the County Defendants in an official capacity should be dismissed.

3. *PPS and PPS Employees Sued in an Official Capacity*

Similarly, Defendant PPS should be dismissed. The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Plaintiff does not allege that he was denied medical treatment pursuant to a policy or custom of PPS. Therefore, PPS and any PPS employees sued in an official capacity should be dismissed.

8

4.    *Discrimination*

The Court turns next to Plaintiff's discrimination claims based on his medical care, his harassment by another inmate, and the denial of his request to be a Jail trustee.  (Doc. 8-1 at 19–20).

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

a.    *Medical Care*

Plaintiff addresses his medical care claims first, and the Court does as well.  (*See* Doc. 8-1 at 19).  As set forth above, the threshold element of an equal protection claim is disparate treatment.  *Scarbrough*, 470 F.3 at 260.  Here, Plaintiff has not alleged facts showing disparate treatment, which is fatal to his claim.

"'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).  But the Court cannot plausibly infer that Plaintiff and the white inmate he compares himself to were similarly situated.  Plaintiff has not alleged that his skin rash was similar in all relevant respects to the white inmate's scar on his buttocks, which

9

produced discharge and required frequent changes of clothes.  (*See* Doc. 8-1 at 19).  Nor can the Court plausibly infer that the two were in fact treated differently.  Although Plaintiff alleges that a Jail nurse applied medication to the white inmate's scar on one occasion (*see id.*), Plaintiff concedes that a Jail nurse applied medication to his rash on two occasions (*id.* at 13).  Without allegations showing disparate treatment, any equal protection claim based on Plaintiff's medical care fails.  *Scarbrough*, 470 F.3d at 260.  *See also Traylor v. Miller*, No. 2:07-CV-50, 2007 WL 2479300, at *5 (W.D. Mich. Aug. 28, 2007) (finding that a plaintiff alleging that another inmate received more favorable treatment had to allege more than only that the other inmate received the treatment the plaintiff requested).

Finally, Plaintiff's dissatisfaction with the medical care he received at the Jail does not equate to a discrimination claim.  To the extent that Plaintiff alleges a several-day delay in his care (*see* Doc. 8-1 at 11–12), he also alleges a medical staffing shortage at the time (*id.* at 10).  And Plaintiff fails to allege facts establishing that any delay in his care was not attributable to the staffing shortage.  Further, accepting as true Plaintiff's claim that Defendant Rutter only photographed a clear area of his back (*id.* at 11), this action was discovered quickly, and Defendant Howard treated Plaintiff's rash with medicated lotion (*id.* at 12).  Although Defendant Rutter arguably erred in photographing Plaintiff's back, "[m]ere error . . . does not violate the equal protection clause." *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987).

Additionally, in so far as Defendant Adams allegedly told Plaintiff to ask another inmate for help, Plaintiff alleges she did so while passing out medication.  (Doc. 8-1 at 13).  Absent a "stark" pattern that is "unexplainable on grounds other than race," a disparate impact on a certain racial group is "not determinative" of intent. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).  Given the acknowledged staffing shortage, Defendant Adams' response

10

is explainable on grounds other than race. *See id.* And to the extent Plaintiff questions the wisdom of her advice, as noted previously, "[m]ere error . . . does not violate the equal protection clause." *E & T Realty Company,* 830 F.2d at 1114.

### b.      Harassment

Following the order of claims presented in the Amended Complaint (*see* Doc. 8-1 at 19), the Court turns next to the incident involving the swastika. Plaintiff bases his equal protection claim regarding this incident on the denial of his requests for the name of the inmate involved and a copy of the videotape. (*Id.*). Since Plaintiff alleges that Defendant Lape is the custodian of the Jail's records, the Court understands this claim to be asserted against him.

As stated above, to establish an equal protection claim, Plaintiff must establish disparate treatment. Plaintiff has not done so. The Amended Complaint does not allege how Defendant Lape treated Plaintiff differently from other people requesting information from the Jail. Merely alleging that a request was unfulfilled is insufficient to state an equal protection claim. *See Hanson v. City of Spokane*, No. 2:19-CV-31, 2019 WL 544956, at *4 (E.D. Wash. Feb. 11, 2019) (finding the plaintiff's equal protection claim to be legally insufficient where he did not allege how he was treated differently from other people requesting public records).

### c.      Jail Trustee Position

In his third, and final, discrimination claim, Plaintiff alleges that Defendant Warner (and presumably Defendant Reeves, as his name is also listed in the heading of this claim) "made sure Plaintiff would not be a trustee based on Plaintiff's questioning of the process." (Doc. 8-1 at 19). While a prisoner "has no constitutional right to prison employment or a particular prison job," *McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (citation omitted), "prison officials cannot discriminate against [a prisoner] on the basis of [the prisoner's] age, race, or handicap, in choosing whether to assign [the prisoner] a job or in choosing what job to assign [the prisoner]."

*Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (citation omitted). Plaintiff's sparse allegations regarding Defendants Warner and Reeves, however, are insufficient to state a claim upon which relief can be granted. Without more, the Amended Complaint "has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). *See also Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[A] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.").

Accordingly, Plaintiff's discrimination claims should be dismissed for failure to state a claim upon which relief can be granted.

### 5. Intentional Spoliation

Plaintiff does not indicate whether his intentional spoliation claim is brought under federal or Ohio law. At base, he asserts that he was improperly denied records under Ohio's Public Records Law. (Doc. 8-1 at 21–22). In an abundance of caution, the Court presumes the claim implicates both Ohio's Public Records Law and the Fourteenth Amendment's Due Process Clause. The Court addresses the claim here to the extent it raises a Fourteenth Amendment due process claim.

To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must:

> establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Assuming for the purposes of this analysis that Plaintiff has pled sufficient facts to show a property interest, he has not shown that the State failed to afford him adequate process. "According

12

to [Sixth] Circuit precedent, 'adequate post-deprivation remedies are all that is required by due process' and whether those remedies are adequate or not 'cannot be proven unless those remedies are exhausted.'" *Joy v. Sain*, No. 1:22-CV-01186, 2023 WL 6588664, at *11 (W.D. Tenn. Aug. 11, 2023), *report and recommendation adopted*, 2023 WL 5867964 (W.D. Tenn. Sept. 11, 2023) (citing *Mertik v. Blalock*, 983 F.2d 1353, 1365 (6th Cir. 1993)). That means that before bringing a due process claim, Plaintiff must show that he exhausted all of his available remedies at the state level. *See id.* He has not done so.

While Plaintiff mentions he filed a mandamus action regarding his public records requests in the Supreme Court of Ohio[1] (Doc. 8-1 at 21), Ohio law provides for an action in the common pleas court where, as here, a plaintiff alleges spoliation of records. *See State ex rel. Kirin v. D'Apolito*, No. 15 MA 61, 2015 WL 5692235, at 1, n.1 (Ohio App. Sept. 23, 2015) ("We explained that R.C. 149.351 specifies that an action for destruction of public records must be filed in the common pleas court. *See* R.C. 149.351(C)."). Plaintiff does not allege that he availed himself of that process and a search of the websites of the Fairfield and Montgomery County Courts of Common Pleas do not reflect Plaintiff bringing such an action in either court.

Accordingly, Plaintiff's due process spoliation claim should be dismissed for failure to state a claim upon which relief can be granted.

### 6. Retaliation

Plaintiff brings retaliation claims against Defendants Towns and Warner. As the claims arise out of different events, they are addressed separately below. (Doc. 8-1 at 23).

---

[1] A search of the Supreme Court of Ohio website reveals that the court dismissed that action in 2024. *See Bonds v. Sheriff Alex Lape and Fairfield County Jail*, No. 2024-0330 (Sept. 18, 2024). (Viewed at: https://www.supremecourt.ohio.gov/pdf_viewer/pdf_viewer.aspx?pdf=238237.pdf&subdirectory=2024-0330\DecisionItems&source=DL_Clerk, under Plaintiff's name and case number). This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (*citing Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

A prisoner seeking to establish a First Amendment retaliation claim must show that (1) he was engaged in protected conduct; (2) the defendant took an adverse action that was capable of deterring a person of "ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

Plaintiff's retaliation claim against Defendant Towns is subject to dismissal because the Court cannot infer the second element of a retaliation claim—the taking of an adverse action. The standard for determining whether particular conduct constitutes adverse action is "whether it is capable of deterring a person of ordinary firmness from exercising his or her [First Amendment rights]." *Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003) (citations omitted). But not every action taken is constitutionally cognizable. *Id*. at 539. "Although the effect on the freedom of speech need not be great in order to be actionable, . . . § 1983 requires injury and [i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise[.]" *Id.* (internal quotations omitted).

As the Western District of Michigan has recently reiterated:

> In the prison context, prisoners "may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Yarrow*, 78 Fed. App'x. at 540. Thus, the "relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Id*. Actions that have been found to constitute adverse action include: (1) actions comparable to administrative segregation; (2) harassment; (3) physical threats; (4) transfers to prison areas used to house mentally disturbed patients; and (5) deprivations of necessary medications. *Id*. (collecting cases).

*Davis v. Bailey*, No. 1:22-CV-00790, 2025 WL 794382, at *4 (W.D. Mich. Mar. 13, 2025).

Here, Plaintiff alleges that after he asked Defendant Towns to keep his medical information private, she yelled at him and sent over Corrections Officers Hunter and Davis. Yelling does not amount to a sufficiently adverse action to support a retaliation claim. *See Murphy v. Kern*, No. 2:18-CV-10150, 2020 WL 8510343, at \*6 (C.D. Cal. Dec. 21, 2020), *report and recommendation adopted*, 2021 WL 784949 (C.D. Cal. Mar. 1, 2021) ("And the Court cannot reasonably infer an adverse action or chilling from intemperate conduct, such as yelling or making rude comments. Such conduct might be discomfiting, but it does not raise First Amendment concerns."). Nor does Defendant Towns' additional act of sending over Hunter and Davis support a retaliation claim. Plaintiff alleges that Hunter and Davis approached him and asked what happened. (Doc. 8-1 at 15–16). They listened to his side of the story, reviewed a videotape, and determined that no discipline was needed. (*Id.*). Although Plaintiff alleges that Defendants Towns called them to put him in solitary (*see id.*), Plaintiff does not allege that he received a disciplinary ticket or any restrictions on his freedom or privileges. Under these circumstances, Plaintiff has failed to allege a plausible retaliation claim against Defendant Towns. *See Davis*, 2025 WL 794382, at \*4 (collecting cases).

Nor has Plaintiff stated a plausible retaliation claim against Defendant Warner regarding Plaintiff's desire to become a Jail trustee. A plaintiff must allege "a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). Here, Plaintiff alleges that he questioned Defendant Warner about the position *after* his request to be a trustee was denied. (*See* Doc. 8-1 at 16). His questions, therefore, could not have been the basis for his not getting the position. *See, e.g.*, *Whiteside v. Collins*, No. 2:08-CV-875, 2009 WL 4281443, at \*9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal, noting that "conclusory allegations of retaliatory motive and temporal

15

proximity alone are insufficient to establish his retaliation claim"), *report and recommendation adopted*, 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010).

Accordingly, Plaintiff's retaliation claims should be dismissed against Defendants Towns and Warner for failure to state a claim upon which relief could be granted.  His claims should also be dismissed against Defendants Adams, PPS, Howard, and Rutter because although named in the claim's heading, there are no allegations against these Defendants in the body of the claim.  (*See* Doc. 8-1 at 22–23).  And, as stated above, PPS is not a proper Defendant in this case.

### 7. *Deliberate Indifference to a Serious Medical Need*

Plaintiff brings his deliberate indifference claims against Defendants PPS, Towns, Rutter, Adams, and Mulder.  (Doc. 8-1 at 25).  But as Plaintiff's claims against Defendant PPS are subject to dismissal for the reasons set forth above, the Court only considers this claim to be raised against Defendants Towns, Rutter, Adams, and Mulder.  (*Id.*).

The government is obligated "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Moreover, the Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward" an inmate's "serious medical needs." *Reilly v. Valdamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (citations omitted).  To state an Eighth Amendment claim concerning denial of medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 102.

Specifically, a prison official may only be held liable for denying proper medical care if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A plaintiff must allege that prison officials denied his reasonable requests for medical care when such need was obvious, and when he was susceptible to undue suffering or threat of tangible residual injury.

16

*Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

An Eighth Amendment deliberate-indifference-to-serious-medical-need claim "contains both an objective component—a 'sufficiently serious medical need'—and a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin Cty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citations omitted). To satisfy the objective component, a plaintiff must prove "that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Id.* (citations omitted). The plaintiff must also show "a sufficiently serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).

The subjective component requires a plaintiff to show "that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (citations omitted). A defendant has a "sufficiently culpable state of mind" if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* (citing *Farmer*, 511 U.S. at 837). In other words, the official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The Sixth Circuit has generally applied a recklessness standard to this component. *Id.* (citations omitted).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Westlake*, 537 F.2d at 860–61 n.5. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims that sound in state tort law." *Id.*; *accord*.

17

*Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) ("[A] difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim."). When medical assistance has been rendered, it must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake*, 537 F.2d at 860–61 n.5. Similarly, allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860–61 n.5. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Here, Plaintiff claims that Defendants Rutter and Adams refused to apply medication to his back, and that Defendant Mulder conspired with Defendant Adams when he repeated her suggestion for Plaintiff to ask another inmate for help. (Doc. 8-1 at 25). Plaintiff also blames Defendants Rutter and Towns for giving him the rash. (*See id.* at 10, 26). "Multiple courts . . . have concluded that dermatological conditions like Plaintiff's [rash] are simply not sufficiently serious as to implicate the Eighth Amendment." *Williams v. Coleman*, No. 1:23-CV-646, 2023 WL 4861740, *4 (W.D. Mich. July 31, 2023) (collecting cases). Even when the skin condition involves pain and itching, it does not constitute a serious medical need for purposes of the Eighth Amendment. *Owusu v. Michigan Dep't of Corr. Pain Mgmt. Comm.*, No. 16-cv-12490, 2019 WL 6139486, at *13 (E.D. Mich. July 19, 2019) (collecting cases). Thus, Plaintiff's claims simply do not rise to the level of an Eighth Amendment claim. In addition, Plaintiff's allegations establish that he received a medicated lotion to treat his back and saw a doctor. (Doc. 8-1 at 12). Although he would have preferred the nursing staff to more frequently apply the lotion to the areas of his back that he either could not or "could just barely" reach (*id.*), prisoners are not entitled to

18

unfettered access to the medical treatment of their choice.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Further, other than his conclusory statements, which are insufficient to support a constitutional claim, *see Twombly*, 550 at 555–57, there are no facts suggesting Defendants Rutter or Towns, or any other Defendants, are to blame for his contracting the rash.

Accordingly, Plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-need claim should be dismissed for failure to state a claim upon which relief can be granted.

### B.     Plaintiff's State Law Claims

Considering the Undersigned's recommendation to dismiss Plaintiff's § 1983 claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c).  *See also Steele v. Lvnv Funding LLC*, No. 3:15-CV-263, 2016 WL 593593, at \*3 (E.D. Tenn. Feb. 12, 2016) ("This case now involves solely state-law claims, so considerations of comity favor remand."); *Gamel v. City of Cincinnati*, 625 F.3d 949, 953 (6th Cir. 2010) (affirming the district court's conclusion "that exercising supplemental jurisdiction 'would not foster judicial economy and would result in . . . needlessly resolving issues of state law.'"); *Duff v. Yount*, 51 F. App'x 520, 522 (6th Cir. 2002) (affirming district court's decision declining jurisdiction over plaintiff's supplemental state-law claims and remanding those claims to state court once it found no basis upon which to exercise federal jurisdiction).  Therefore, the Court should remand Plaintiff's state law claims to the Montgomery County Court of Common Pleas.

### IV.     CONCLUSION

For the foregoing reasons, the Undersigned concludes the Court should dismiss Plaintiff's § 1983 claims and remand his state law claims.  Accordingly, the Undersigned **RECOMMENDS** the following:

1.     Plaintiff's § 1983 claims be **DISMISSED without prejudice** for failure to state a

claim upon which relief can be granted.

2.      Plaintiff's state-law claims be **REMANDED** to the Montgomery County Court of Common Pleas for further proceedings pursuant to 28 U.S.C. § 1367(c).

3.      Considering the above recommendations, the motions to dismiss the Amended Complaint filed by Defendants Smetana and PPS (Docs. 13; 15) be **DENIED without prejudice as moot**.

4.      The Court **CERTIFY** under 28 U.S.C. § 1915(a)(3) that for the foregoing reasons, an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore **DENY** Plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

      **IT IS SO ORDERED AND RECOMMENDED**.


June 30, 2026                                    */s/ Kimberly A. Jolson*
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE


**PROCEDURE ON OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  *See also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).